O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JEROME JACKSON, | ) | Case No. EDCV 07-1449-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jerome Jackson seeks review of the Commissioner's final decision terminating payment of Supplemental Security Income ("SSI") benefits. For the reasons discussed below, the Commissioner's decision is affirmed.

**I.   Facts and Procedural History**

Plaintiff was born on September 20, 1956,[1] and he has an eighth-grade education. (Administrative Record ("AR") at 216.) Plaintiff has no past relevant work experience within the meaning of the regulations, 20 C.F.R. § 416.965. (AR 18.)

Plaintiff filed an application for SSI benefits on August 11, 1998,

---

[1] The joint stipulation incorrectly states that Plaintiff is 31 years old. (Joint Stip. 2.)

alleging a disability onset date of October 14, 1997, due to impairments of the musculoskeletal and cardiovascular systems, as well as a visual impairment. (Joint Stip. 2.) After the Commissioner denied Plaintiff's claim initially and upon reconsideration, a hearing was held on October 26, 1999, before Administrative Law Judge ("ALJ") Paul Tierney. (AR 393.) The ALJ determined that Plaintiff's severe impairments included coronary artery disease, bilateral patella displacement, right shoulder bursitis, and a vision defect. (AR 221.) On November 24, 1999, the ALJ concluded that Plaintiff was under a disability as defined by the Social Security Act, and Plaintiff began receiving SSI benefits shortly thereafter. (AR 218, 60.)

The Commissioner conducted a continuing disability review in November 2004, at the conclusion of which the Commissioner determined that Plaintiff's medical impairments had improved and terminated his benefits. (AR 229-32.) On March 10, 2005, a Disability Hearing Officer also concluded that Plaintiff was no longer disabled. (AR 250-60.) At Plaintiff's request, a hearing was held before ALJ F. Keith Varni on July 17, 2006, for which Plaintiff failed to appear. (AR 444-46.) The ALJ proceeded with the hearing and denied Plaintiff's claim, relying on the record and a vocational expert's testimony in concluding that Plaintiff was not disabled. (AR 42-47.) Plaintiff appealed the ALJ's decision, claiming that he had not received notice of the hearing. (AR 37.) The Social Security Administration Appeals Council remanded the case to ALJ Varni for a new hearing on October 16, 2006. (AR 35.) The ALJ held a subsequent hearing on June 1, 2007, at which Plaintiff testified and was represented by counsel. (AR 15.) A vocational expert also testified at the hearing.

The ALJ issued a decision on August 17, 2007, concluding that

Plaintiff's disability had ended on November 1, 2004. (AR 20.) Applying the analysis mandated by the regulations, the ALJ found that Plaintiff's impairments did not meet or equal any listed impairment, and that Plaintiff's "severe" impairments included only the musculoskeletal and cardiovascular systems, not a vision defect. (AR 17.) The ALJ determined that Plaintiff's impairments had improved since the prior ALJ's decision awarding benefits on November 22, 1999, and that the improvement related to Plaintiff's ability to work. (*Id.*) The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform work at the medium exertional level, with the following limitations:

> The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand and walk for 2 hours out of an 8-hour work day, and he has no restrictions in sitting. He cannot perform activities requiring active knee extension as he would have difficulty with foot controls. He should never climb or balance. He can occasionally kneel, crouch, crawl, and stoop. He cannot perform hazardous duties such as working with machinery or working at heights. He is unable to change positions quickly.

(AR 17.) The ALJ noted that although Plaintiff had no past relevant work to which he could return, he relied on the vocational expert's testimony in concluding that Plaintiff could work as an assembler, packager, and laundry sorter/folder. (AR 19.) The ALJ thus concluded that Plaintiff's disability had ended on November 1, 2004, and that Plaintiff was no longer entitled to SSI benefits. (*Id.*)

The Appeals Council denied Plaintiff's request for review on October 13, 2007, and Plaintiff filed this action on November 7, 2007. Plaintiff alleges that the ALJ erred by failed to consider an examining

physician's opinion regarding the limitations of Plaintiff's visual impairment and a treating psychologist's opinion that Plaintiff was unable to work. (Joint Stip. 3.) Plaintiff seeks an award of benefits or a remand for a new administrative hearing. (Joint Stip. 14.)

**II.  Standard of Review**

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

As a preliminary matter, the two arguments Plaintiff presents in the joint stipulation require the same legal analysis. Plaintiff argues that the ALJ failed to discuss two medical opinions that bear on Plaintiff's impairments and his ability to work. Plaintiff contends that

the ALJ should have provided "specific and legitimate" reasons for "rejecting" these opinions, and his failure to do so requires remand for a new hearing.

Both of the opinions upon which Plaintiff relies were rendered in 1999, prior to ALJ Tierney's decision awarding benefits, which is known as the "comparison point decision" or "CPD". In arguing that the ALJ should have specifically discussed particular aspects of these older reports, Plaintiff relies on cases addressing initial disability determinations, as opposed to termination of benefits cases. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999) (denial of disability insurance ("SSDI") benefits and SSI on initial determination); *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995)(denial of SSDI benefits on initial determination); *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995)(denial of SSDI benefits on initial determination); *Crain v. Callahan*, 996 F. Supp. 1003 (D. Or. 1997)(denial of SSDI benefits and SSI on initial determination). (Joint Stip. 4.) This distinction is important, because the analysis the ALJ must undertake is different in the two types of cases.

For initial disability determinations, the ALJ must consider whether the claimant is disabled, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" for a certain period of time. 20 C.F.R. § 416.905(a). The ALJ undertakes a five-step analytical process in making this determination. In a termination of benefits case, on the other hand, the ALJ must consider whether there has been any medical improvement in the impairments that allows the claimant to engage in substantial gainful activity. 20 C.F.R. § 416.994(b). Medical improvement means "any decrease in the medical severity of [the

claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *Id.* § 416.994(b)(1)(I).

The regulations outline a seven-step inquiry the ALJ must utilize to determine whether a claimant continues to be disabled, which involves consideration of the following questions: (1) whether the claimant's impairments meet or equal one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (2) whether medical improvement has occurred since the original disability finding; (3) whether the medical improvement, if any, is related to the claimant's ability to work; (4) in the absence of medical improvement related to work, whether any of the specified exceptions apply that would render the claimant not disabled; (5) whether the impairments are "severe"; (6) whether the claimant is able to return to past relevant work; and (7) whether the claimant can do other types of work. 20 C.F.R. § 416.994(b)(5). The steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant. In reaching his decision that Plaintiff's disability had ended in November 2004, ALJ Varni addressed each of these seven steps.

Plaintiff does not challenge ALJ Varni's conclusion that, since the initial disability determination in 1999, Plaintiff had had a medical improvement that would allow him to engage in substantial gainful activity. Instead, Plaintiff claims that the ALJ erred by "rejecting" the prior medical opinions. However, Plaintiff misinterprets both the ALJ's decision and the proper legal analysis required for this termination of benefits case. ALJ Varni did not "reject" the prior medical opinions. ALJ Tierney had already credited those opinions when he found Plaintiff to be disabled in 1999. Although the prior medical

records are certainly relevant to determining whether there has been a medical improvement, ALJ Varni was not required to revisit ALJ Tierney's decision. Instead, ALJ Tierney's decision, which is based on Plaintiff's prior medical records, is the baseline for ALJ Varni's evaluation of whether Plaintiff has medically improved in recent years. None of the cases Plaintiff cites indicate that the ALJ in a termination of benefits case must incorporate prior medical records into the improvement analysis in the same way as for an initial disability determination.

Even if the regulations did require the ALJ to evaluate the prior medical opinions as Plaintiff suggests, Plaintiff's arguments are still without merit, for the reasons discussed below.

**A.   Consultative Internal Medicine Evaluation**

Plaintiff relies on an April 17, 1999, report, in which examining physician Joel Hendler, M.D., opined that Plaintiff could "use his hands for repetitive hand and finger action, although his vision would limit the fine details of what he could handle." (AR 170.) Plaintiff has characterized this assessment as "the limitation regarding fine details," and he argues, "Dr. Hendler has determined that the Plaintiff does have significant physical impairments that cause limitations. Indeed such limitations can prevent the Plaintiff from working." (Joint Stip. 4, 9.) There are several problems with Plaintiff's arguments.

First, Dr. Hendler did not opine that Plaintiff's vision would pose a significant impediment to Plaintiff's ability to work in general. Dr. Hendler simply suggested that Plaintiff's vision would limit his ability to work with fine details. Plaintiff does not explain why this limitation, had the ALJ incorporated it into his RFC assessment, would have precluded Plaintiff from working. Nor does Plaintiff offer any theory as to how this limitation could have changed the ALJ's ultimate

7

conclusion that there had been medical improvement. In essence, Plaintiff chose a relatively minor detail from an examining physician's opinion issued before the CPD and, without explaining why this detail has any bearing on the issues, insists that the ALJ's failure to discuss it requires an entirely new hearing. However, the ALJ need not discuss every piece of evidence in the record, only evidence that is significant and probative. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(per curiam)(citation omitted). The Court is not convinced, in light of the issues discussed below, that this detail is significant or probative.

Second, the medical evidence in the record, as ALJ Varni discussed in both of his decisions, does not support the conclusion that Plaintiff's visual limitations are currently significant. To support his claims of continuing disability, Plaintiff provided medical records and appeared for two consultative examinations. These records show that on September 20, 2004, Plaintiff's visual acuity was 20/30-2 in the right eye and 20/25-3 in the left eye.[2] (AR 344, 363.) An independent medical examination conducted on October 26, 2004, showed Plaintiff's corrected visual acuity at 20/50 in the right eye, 20/40 in the left eye, and 20/30 with both eyes. (AR 347.) A later orthopedic consultation also revealed Plaintiff's corrected visual acuity to be quite good: 20/40 in the right eye, 20/40 in the left eye, and 20/30 with both eyes. (AR 371.) The orthopedist also noted that Plaintiff had no difficulty moving

---

[2] This report from a treating physician also indicates that Plaintiff has glaucoma in both eyes. The report states that Plaintiff was referred to ophthalmology for a follow-up appointment, but it does not appear from the record that he has pursued any treatment for glaucoma. (AR 344.) The physician did not suggest that glaucoma had any effect on Plaintiff's ability to work, nor did Plaintiff argue the point in the Joint Stipulation.

around the office without assistance. (*Id.*)

Normal visual acuity is 20/20.[3] By contrast, the Social Security Act defines blindness as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C.A. § 416(i)(1) (West 2008). All recent medical reports, including from Plaintiff's treating physicians, indicate that Plaintiff's vision has successfully been corrected nearly to normal. The ALJ's conclusion that Plaintiff's visual impairment was not severe is supported by substantial evidence in the record.

Finally, the jobs that the ALJ determined Plaintiff could perform do not include "fine details." For example, the ALJ indicated that Plaintiff could work as a laundry sorter/folder. (AR 19.) The Dictionary of Occupational Titles defines "laundry laborer" as follows:

> Prepares laundry for processing and distributes laundry, performing any combination of the following duties: Opens bundles of soiled laundry. Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections. Weighs laundry on scales and records weight on tickets. Removes bundles from conveyor and distributes to workers, using handtruck. Fastens identification pins or clips onto laundry to facilitate subsequent assembly of customers' orders. Sorts net bags containing clean wash according to customers' identification tags....

DICOT 361.687-018, 1991 WL 672992 (4th Ed. 1991). Even if the ALJ had included in his RFC assessment that Plaintiff could not do "fine detail"

---

[3] American Optometric Ass'n, http://www.aoa.org/myopia.xml.

work, Plaintiff would still be able to work as a laundry sorter/folder. Plaintiff has failed to demonstrate that inclusion of the "fine detail limitation" would have had any effect on the ALJ's decision. Plaintiff is not entitled to relief on this claim.

**B.   Treating Psychologist's Opinion**

Plaintiff also relies on second report, dated February 22, 1999, in which a psychologist appears to suggest that Plaintiff's frequent conflicts at home might limit his ability to work. (AR 159.) Plaintiff asserts, "Dr. Simonet has determined that the Plaintiff does have a significant mental limitation that can prevent the Plaintiff from working." (Joint Stip. 11.) Plaintiff argues that the ALJ's failure to discuss this opinion warrants remand: "Here we have a treating psychologist who opined that the Plaintiff is unable to work and has a dysfunction rating of 'severe.' Simply put, the ALJ is not permitted to ignore an opinion of disability from a treating source without explanation." (Joint Stip. 14.) This argument is also without merit.[4]

Plaintiff was awarded SSI in 1999 based on several severe impairments, which notably did not include mental illness. (AR 220-21.) As discussed above, this is a termination of benefits case, so the ALJ was required to determine whether Plaintiff's condition had improved from the comparison point decision. The comparison point decision makes no mention of a severe mental illness.

Moreover, Plaintiff has not provided any medical evidence to suggest that he currently suffers from a mental impairment, and, as the ALJ noted, he has received no mental health treatment since the

---

[4] Plaintiff's assertion that the psychologist gave Plaintiff a "severe dysfunction rating" is incorrect. A review of the record reveals that the psychologist gave Plaintiff a dysfunction rating of "moderate," (AR 159), which presumably means something less than "severe."

comparison point decision. (AR 20.) The ALJ attempted to determine whether Plaintiff suffered from a mental impairment by ordering a psychiatric consultation, but Plaintiff failed to appear for two separate appointments. (AR 20, 390-92.) This failure alone is sufficient for the ALJ to conclude that Plaintiff is no longer disabled. 20 C.F.R. § 416.918(a) ("If you are already receiving benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arranged for you, we may determine that your disability ... has stopped because of your failure or refusal."). Additionally, Plaintiff did not raise his mental health at the hearing when asked what impairments prevented him from working. (AR 454-55, 460.)

Plaintiff bears the burden of establishing the existence of a disabling impairment. 20 C.F.R. § 416.912. Plaintiff has failed to meet that burden here. The ALJ's conclusion that Plaintiff does not suffer from a mental impairment is supported by substantial evidence in the record. Plaintiff is not entitled to relief on this claim.

**IV.  Conclusion**

For the reasons discussed above, the decision of the Social Security Commissioner is affirmed.

DATED: October 2, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge